# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
### CENTRAL DIVISION

| | | |
|---|---|---|
| **JPMORGAN CHASE BANK, N.A.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No.** _____ |
| | ) | |
| **BRYON NEVIUS,** | ) | |
| Serve:  21355 Highway 179, | ) | |
| Jamestown, Missouri 65046, | ) | |
| | ) | |
| | ) | |
| **MIDWEST LAND MANAGEMENT, LLC,** | ) | |
| Serve:  Jewell D.H. Patek, Registered Agent, | ) | |
| 21020 West Broadway, Suite 10, | ) | |
| Columbia, Missouri 65201, | ) | |
| or | ) | |
| 719 Swifts, | ) | |
| Jefferson City, Missouri  65109, | ) | |
| or | ) | |
| 331 Madison St., | ) | |
| Jefferson City, Missouri 65101, | ) | |
| | ) | |
| | ) | |
| **JOSEPH W. ROBEY,** | ) | |
| 2107 Whitney Woods Drive, | ) | |
| Jefferson City, Missouri  65101, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **DAVID L. ROBEY,** | ) | |
| Serve:  325 Meridian Ave., Apt. 10, | ) | |
| Miami Beach, Florida  33139, | ) | |
| or | ) | |
| 2405 W. North Ave., | ) | |
| Melrose Park, Illinois 60160, | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

Plaintiff JPMorgan Chase Bank, N.A. ("Chase") states and alleges the following for its Complaint against Defendants. Chase seeks monetary and other, non-monetary relief against Defendant Bryon Nevius ("Borrower") as set forth below. Chase seeks non-monetary relief (specifically a judicial declaration as to Defendants' respective interests, if any, in a parcel of residential real estate) towards Defendants Midwest Land Management, LLC; Joseph W. Robey; and David L. Robey as set forth below. Chase seeks no monetary recovery against Defendants Midwest Land Management, LLC; Joseph W. Robey; or David L. Robey.

## PARTIES, JURISDICTION, AND VENUE

1.      Jurisdiction and venue are properly in this Court. This case concerns unpaid debt due and owing by Defendant Bryon Nevius ("Borrower") to Chase relating to an improved residential property located in Moniteau County, Missouri at the common address of 21355 Highway 179, Jamestown, Missouri 65046 and referenced by tax parcel ID 062100000101 (the "Subject Property"). The Subject Property bears the following legal description:

> All that part of the Southeast quarter of the Northeast quarter lying North of State Highway 179, EXCEPT the West 20 feet thereof; and the East 30 acres of the Northeast quarter of the Northeast quarter; all in Section 10, Township 46, Range 14, Moniteau County, Missouri.

(the "Subject Property").

2.      Chase is a citizen of the State of Ohio in that Chase is a national bank with its main office, as set forth in its articles of association, in Ohio. Chase may be served with Court submissions herein via its undersigned counsel. Chase has an interest in the Subject Property, as more fully described below, because Borrower owes Chase unpaid debt the repayment of which is secured by a recorded lien interest in the Subject Property in Chase's

Case 2:17-cv-04205-BCW   Document 1   Filed 10/25/17   Page 2 of 22

favor. The lien is on record with the Moniteau County, Missouri Recorder of Deeds in its records for the Subject Property.

3.      Borrower is a resident of the State of Missouri and, upon information and belief, currently resides at the Subject Property. Borrower may be served with the Summons and Complaint at the Subject Property. Upon information and belief, Borrower has lived at the Subject Property since on or before completion of the construction of the residence/improvements on the Subject Property (collectively, "Subject Property") in or around August 2008. Borrower constructed the Subject Property using funds borrowed from Chase, and the loan transaction documents were signed by Borrower at a closing in Moniteau County, Missouri.

4.      Defendant Midwest Land Management ("Midwest Land") is, upon information and belief, an unincorporated association. Midwest Land Management is named as a Defendant herein solely because the records of the Moniteau County, Missouri Recorder of Deeds for the Subject Property indicate that Borrower purported to convey an interest in the Subject Property to Midwest Land via a Warranty Deed dated October 23, 2009 (attached hereto as Ex. A).

5.      Midwest Land may claim an interest in the Subject Property by virtue of the Warranty Deed. Chase seeks no monetary relief against Midwest Land. Upon information and belief, the registered agent for Midwest Land is Jewell D.H. Patek, and the registered agent may be served with the Summons and Complaint at 21020 West Broadway, Suite 10, Columbia, Missouri; or 719 Swifts, Jefferson City, Missouri 65109; or 331 Madison St., Jefferson City, Missouri 65101.

6.     Defendant Joseph W. Robey ("Joseph Robey"), upon information and belief, is a resident of the State of Missouri and may be served with the Summons and Complaint at 2107 Whitney Woods Drive, Jefferson City, Missouri 65101. Joseph Robey is named as a Defendant herein solely because he may claim an interest in the Subject Property by virtue of an Assignment of Note and Deed of Trust ("Robey Assignment") dated December 5, 2005 and recorded with the Moniteau County, Missouri Recorder of Deeds (attached hereto as Ex. B).

7.     The Robey Assignment conveyed an interest to Joseph Robey individually in the Robey Note for $96,525.00 the repayment of which was secured by the Robey Deed of Trust. Chase seeks no monetary relief against Joseph Robey. Joseph Robey is named herein because the records of the Moniteau County, Missouri Recorder of Deeds for the Subject Property do not contain a satisfaction or release of the Robey Deed of Trust, defined immediately below.

8.     The Robey Assignment referenced a Deed of Trust by Borrower granting a lien and security interest in the Subject Property to the Donald L. Robey Trust established by the Revocable Living Trust Indenture dated February 21, 2004 (the "Robey Deed of Trust"). Upon information and belief, the Robey Deed of Trust (attached hereto as Ex. C) secured Borrower's repayment of a loan to him of $96,525.00 by the referenced Trust. Borrower was to repay the loan by its maturity date, defined in the Robey Deed of Trust as "the end of three (3) years after the date of the Note."

9.     The Note ("Robey Note") was dated September 2, 2004. Upon information and belief, the debt evidenced by the Robey Note has been repaid and satisfied. A review of the records for the Subject Property maintained in the Moniteau County, Missouri Recorder of Deeds reveals no indication that the Robey Deed of Trust has been foreclosed, and

the records of the Moniteau County, Missouri Circuit Court do not indicate that the Robey Note otherwise has been subject to court enforcement against Borrower.

10.     Defendant David L. Robey ("David Robey"), upon information and belief, is a resident of the State of Florida and may be served with the Summons and Complaint at 325 Meridian Ave., Apt. 10, Miami Beach, Florida 33139. Upon information and belief, David Robey also may be a resident of the State of Illinois and may be served with the Summons and Complaint at 2405 W. North Ave., Melrose Park, Illinois 60160.

11.     David Robey is named as a Defendant herein solely because he may claim an interest in the Subject Property by virtue of the Robey Assignment. The Assignment conveyed an interest to David Robey individually in the Robey Note for $96,525.00 the repayment of which was secured by the Robey Deed of Trust. Chase seeks no monetary relief against David Robey. Chase incorporates herein its allegations concerning Joseph Robey and the Donald L. Robey Trust. David Robey is named herein because the records of the Moniteau County, Missouri Circuit Court for the Subject Property do not contain a satisfaction or release of the Robey Deed of Trust.

## FACTS COMMON TO ALL COUNTS

12.     Chase incorporates herein its above allegations.

## BORROWER'S OWNERSHIP OF THE SUBJECT PROPERTY
## AND ITS INGRESS/EGRESS

13.     Borrower came to own the Subject Property via a General Warranty Deed dated on or about September 2, 2004 wherein Donald L. Robey (co-trustee of the Donald L. Robey Trust established by the Revocable Living Trust Indenture dated February 21, 2004) granted and conveyed that entity's fee simple interest in the Subject Property to Borrower. The

5

General Warranty Deed was recorded with the Moniteau County, Missouri Recorder of Deeds in the records for the Subject Property and is attached here as Ex. D.

14. The General Warranty Deed described the Subject Property as subject to and benefitting from a roadway easement. Upon information and belief, the roadway easement is the only means of ingress/egress to the Subject Property ("Roadway Easement"), and the Roadway Easement thereby benefits the Subject Property and its owner(s).

15. On or about May 29, 2007, Harvey D. Derendinger and Anna M. Derendinger granted and conveyed the Roadway Easement to Borrower via a General Warranty Deed that was recorded with the Moniteau County, Missouri Recorder of Deeds on May 31, 2007 in the records for the Subject Property. The General Warranty Deed is attached hereto as Ex. E. The Roadway Easement is legally described as:

> A roadway 20 feet wide located and described as follows: Beginning at the Northwest corner of the Southeast quarter of the Northeast quarter of Section 10, Township 46, Range 14, and running thence East 20 feet, thence South to the Public road, thence West with the public road 20 feet to the West line of said quarter, thence North to the beginning point being a strip 20 feet wide and lying East of the West line of said quarter and North of the Public road

("Roadway Easement"). As set forth below, Chase seeks a judicial declaration that the Roadway Easement is valid and exists for the use and benefit of the Subject Property and for the use and benefit of any current and subsequent owner of the Subject Property.

16. On or about January 18, 2012, Borrower re-recorded the General Warranty Deed conveying the Roadway Easement to him in the records of the Subject Property maintained by the Moniteau County, Missouri Recorder of Deeds. A copy of the General Warranty Deed Acceptance and Acknowledgement by Grantee, dated January 18, 2012, is attached hereto as Ex. E.

6

17.     In connection with the Subject Loan (defined below), Borrower executed a Deed of Trust naming Chase as grantee and conveying a lien and security interest in the Subject Property to Chase to secure repayment of the Subject Loan and Borrower's other covenants and promises contained in the Loan Documents (defined below).

18.     The Deed of Trust referred to and incorporated a Missouri Construction Addendum to Deed of Trust (Ex. F hereto). The Deed of Trust (without the Addendum) was recorded in the records for the Subject Property as maintained by the Moniteau County, Missouri Recorder of Deeds. A copy of the Deed of Trust certified by the Moniteau County, Missouri Recorder of Deeds on June 14, 2017 is attached hereto as Ex. G.

### CONSTRUCTION OF BORROWER'S RESIDENCE/IMPROVEMENTS ON THE SUBJECT PROPERTY

19.     A sizable residence and, upon information and belief, other improvements are located on and are part of the Subject Property (collectively, "Subject Property") and were constructed on behalf of Borrower in 2007-2008 using funds borrowed by Borrower from Chase in the original principal amount of $331,900.00 (the "Subject Loan"). Upon information and belief, construction on the Subject Property was completed in or around August 2008.

20.     Borrower's agreement to repay the Subject Loan was described in, among other writings collectively identified as "Loan Documents," a Missouri Construction Loan Agreement, attached hereto as Ex. H, signed by Borrower and Chase on August 3, 2007. Also on August 3, 2007, Borrower and Chase executed a Construction Loan Agreement Addendum and Modification, attached hereto as Ex. H.

21.     Among other covenants and responsibilities, Borrower was required to lock-in an interest rate for the repayment of the Subject Loan by a deadline referred to in the Loan Documents as the "Rollover Date," defined in the Construction Loan Agreement as August

7

3, 2008, "which is the date on which the permanent phase of your loan begins." The permanent phase of the Subject Loan was in contrast to the construction phase, which began on or around the closing date for the Subject Loan (on or about August 3, 2007) when Borrower began receiving a series of disbursements of borrowed funds to pay his contractor to construct the Subject Property.

22.     Locking in the interest rate/converting the Subject Loan to the permanent phase was one of the terms and conditions of the Subject Loan, which Borrower agreed to follow and complete in accepting the borrowed funds, as set forth in, among other Loan Documents, Section 2 of the Construction Loan Agreement:

> Borrower and Lender agree that upon the closing of the Loan ("Closing") and the satisfaction of all conditions in the commitment letter given by Lender to Borrower for this Loan, Lender shall make the Loan to Borrower and Borrower shall accept the Loan upon the terms, conditions, covenants, provisions, representations, and warranties contained in this Loan Agreement and any other Loan Documents. All Disbursements under this Loan Agreement shall be evidenced by the Note, bear interest at the rate specified in the Note, and be secured by the Security Instrument and any other security agreements required by Lender. Borrower acknowledges and agrees that Lender's acceptance of this Loan Agreement does not constitute either an approval of any covenants, conditions and/or restrictions affecting the Property or a representation that the Improvements conform to any existing covenants, conditions and/or restrictions.

23.     The requirement to lock-in an interest rate on the Subject Loan also was set forth in a Lock-In Agreement signed by Borrower and Chase on March 29, 2007, with its Construction Addendum to Lock-In Agreement, attached hereto as Ex. I. In the Construction Addendum to Lock-In Agreement, Borrower indicated that he chose the option of a "floating interest rate," which required a lock-in of the interest rate by "the earlier of the lock period I select or the maturity of the construction phase of my loan. I MUST lock at least (3) business days prior to the Rollover Date."

24.     Upon information and belief, full construction of the Subject Property and the Rollover Date occurred on or around August 2008.

25.     At the closing of the Subject Loan by Borrower, which occurred in Moniteau County, Missouri, Borrower executed, made, and delivered a promissory Note (with addendum) (attached hereto as Ex. J).  The Note evidenced the Subject Loan and Borrower's obligations to repay it according to the terms and conditions described in the Note and Deed of Trust.

26.     The Note is payable to Chase, and Chase is the holder of the Note within the meaning of Missouri law.  The Note was originally payable to Chase, and the Note bears an endorsement by Chase in blank without recourse.  Chase, through its legal counsel herein, is in possession of the original Note.

27.     On or about December 16, 2015, Borrower was presented with and viewed the original Note at the Jefferson City, Missouri law office of Chase's undersigned legal counsel. This presentment and viewing was made on behalf of Chase by its legal counsel.

28.     The Note required Borrower to repay $331,900.00 to Chase with interest, and the maturity date of the Subject Loan was September 1, 2038.

29.     To secure repayment of the Note, on August 3, 2007, Borrower executed the Deed of Trust referenced above as Ex. G.  In the Deed of Trust, Borrower covenanted that he was the fee simple owner of the Subject Property with the authority to convey a valid lien interest to Chase (defined as grantor and lender) to secure repayment of the Subject Loan:

> This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants, bargains, sells, conveys and confirms to Trustee, in trust, with power of sale ... TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and

9

fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument.

30.     The Deed of Trust did not convey a lien over or interest in the Roadway Easement, and Chase seeks a judicial declaration herein that the Roadway Easement is valid and exists for the benefit of the Subject Property and its current and subsequent owner(s).

31.     Upon information and belief, by the time of executing the Deed of Trust to Chase, Borrower had repaid and satisfied the debt of the Robey Note, although the Robey Deed of Trust has not been released of record with the Moniteau County, Missouri Recorder of Deeds. Chase herein seeks judicial foreclosure under the Deed of Trust and a court declaration that the Robey Deed of Trust is satisfied, creates no lien superior to the lien of the Deed of Trust, and is extinguished by the Court order granting judicial foreclosure under the Deed of Trust.

32.     Under the Loan Documents, Chase would incrementally release funds ("draws") to Borrower to pay for the cost of constructing his residence ("improvement") on the Subject Property. The first such draw occurred at the closing of the Subject Loan and was directed to Holiday Construction in the amount of $32,754.40.

33.     Eventually, Chase disbursed the full amount needed by Borrower to construct the Subject Property, with the last draw on the Subject Loan occurring on June 17, 2008 for $99,100.00. Chase funded construction of the Subject Property and otherwise satisfied any obligation Chase had to Borrower under the Loan Documents.

## BORROWER'S MONETARY AND NON-MONETARY VIOLATIONS OF AND DEFAULTS UNDER THE LOAN DOCUMENTS

34.     Section 12.17 of the Construction Loan Agreement identified an Event of Default under the Construction Loan Agreement and the other Loan Documents[1] as occurring if Borrower failed to timely modify the Subject Loan from the construction phase to the permanent phase by the deadline of the Rollover Date:

> Borrower fails to timely modify the Loan from the construction phase to the permanent phase as contemplated by the Note, the Construction Agreement, Addendum to Fixed Rate or Adjustable Rate Note, this Loan Agreement and/or the other Loan Documents.

### Borrower Failed to Convert the Subject Loan to the Permanent Phase

35.     On or around August 3, 2008 (the Rollover Date), Borrower did not lock in an interest rate/convert the Subject Loan to the permanent phase.  Upon information and belief, as of the filing date of this Complaint, Borrower has failed and refused to himself lock in an interest rate/convert the Subject Loan to the permanent phase within the requirements of his Loan Documents.

36.     Borrower also has failed to repay any of the unpaid principal balance of the Subject Loan within the terms and conditions of the Note, Deed of Trust, and Loan Documents.

37.     After learning that the Subject Property was fully constructed but that Borrower had failed to convert the Subject Loan to a permanent phase, on or about November 20, 2009, Chase wrote Borrower to demand that he convert the Subject Loan.  The correspondence gave Borrower additional time to convert the Subject Loan but Borrower failed

---

[1]     The Construction Loan Agreement defined "Loan Documents" as "Loan Agreement, the Note and any addenda thereto, the Security Instrument and any addenda thereto, the Modification Agreement and any other documents evidencing and/or securing the Loan or the procedures related thereto."

11

to convert the Subject Loan then or at any subsequent time prior to this Complaint. The provision of additional time by Chase was not required by Section 7 of the Construction Loan Agreement Addendum. Nevertheless, Borrower failed to convert the Subject Loan during this additional opportunity to do so offered by Chase.

38. Pursuant to Section 13.6 of the Construction Loan Agreement, Chase had the right to treat the Subject Loan as having been converted to the permanent phase with an associated interest rate.

**Borrower Failed to Repay the Subject Loan According to its Terms and Conditions**

39. On or about July 15, 2010, legal counsel for Chase informed Borrower of his defaults and breaches of the Loan Documents, and that the Subject Loan had been referred to the legal counsel for foreclosure. The correspondence is attached as Ex. K.

40. In response to the July 15, 2010 letter, legal counsel for Borrower wrote Chase's legal counsel on August 3, 2010 to dispute the situation, but the letter acknowledged that "Mr. Nevius received a construction loan from JP[]Morgan Chase regarding the above-referenced Property ..." The letter is attached hereto as Ex. L. However, Borrower failed to repay the Subject Loan within the terms and conditions of the Note, Deed of Trust, and Loan Documents in connection with his counsel's July 15, 2010 correspondence.

41. On or about May 27, 2011, Chase directed correspondence to the address for the Subject Property and notified Borrower again that he was in breach and default of the Loan Documents. The May 27, 2011 correspondence (Ex. M hereto) advised Borrower of an opportunity to cure the breach/default and that, if he failed to cure the breach/default, the debt of the Subject Loan would be accelerated without further notice and legal remedies pursued by Chase regarding the Subject Loan.

42.     Chase, through its representatives and legal counsels, has accelerated the debt of the Subject Loan.

43.     On or about December 4, 2015, Chase's legal counsel provided a copy of the Note to Borrower, and Chase's counsel presented the original Note to Borrower for his viewing at the Jefferson City, Missouri office of the undersigned law firm.  A copy of the December 4, 2015 correspondence from Chase's counsel is Ex. N hereto.

44.     Following the December 4, 2015 correspondence, Chase's counsel communicated about the Subject Loan with Borrower through letters dated November 17, 2016, December 15, 2016, and June 29, 2017.  These letters are collectively attached hereto as Ex. O.

45.     On or about August 17, 2016, Chase's foreclosure legal counsel wrote Borrower to advise of the default and that the Subject Loan had been referred to that firm for foreclosure.  The correspondence is attached as Ex. P.

**Borrower Recorded Improper Filings in the Land Records for the Subject Property**

46.     On or about November 2, 2009, approximately two years after Borrower executed and delivered the Deed of Trust promising that he would not convey an interest in the Subject Property, Borrower executed a document purporting to transfer an interest in the Subject Property to Midwest Land.  The Warranty Deed, as the document was labeled (Ex. A), was recorded in the records for the Subject Property maintained by the Moniteau County, Missouri Recorder of Deeds as Instrument No. 2009-2652.

47.     The execution and recording of the Warranty Deed violated and breached, among other Loan Documents, Section 18 of the Deed of Trust ("Transfer of the Property or a Beneficial Interest in Borrower.") and constituted a default and breach by Borrower:

> As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or

13

escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser ... If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument ...

48.     On or about August 24, 2011, Borrower recorded in the records for the Subject Property maintained by the Moniteau County, Missouri Recorder of Deeds an "Affidavit of Adverse Possession." The Affidavit of Adverse Possession was assigned Instrument No. 2011-1613 by the Recorder of Deeds. The Affidavit of Adverse Possession is attached hereto as Ex. Q.

49.     Among other statements, Borrower stated in the Affidavit of Adverse Possession that he has "continuously and adversely possessed the above property since August 3, 2007 to the exclusion of all others."

50.     The Affidavit of Adverse Possession is an improper recording regarding the Subject Property. Borrower's statement is inconsistent with his covenant in the Deed of Trust that he was lawfully seized of the Subject Property and not in an adverse position to anyone else regarding ownership of the Subject Property, which Borrower had come to own via the General Warranty Deed dated on or about September 2, 2004. In the Warranty Deed, Donald L. Robey (co-trustee of the Donald L. Robey Trust established by the Revocable Living Trust Indenture dated February 21, 2004) granted and conveyed that entity's fee simple interest in the Subject Property to Borrower.

51.     On or about January 26, 2011, Borrower recorded an "Affidavit" in the records for the Subject Property maintained by the Moniteau County, Missouri Recorder of Deeds. The Affidavit was assigned Instrument No. 2011-182 by the Recorder of Deeds and is attached hereto as Ex. R.

52.     Among other statements, the Affidavit referenced the Deed of Trust and stated that "[i]f I did, in fact, through ignorance, stupidity, neglect or duplicity, grant or covenant any interest in my property or estate to anyone, Trustee, beneficiary or Lender, I have changed my mind, and it is now my will to revoke and rescind any will to which I may have previously attested."  The Affidavit also stated that "I hereby revoke, rescind, abort, recall, repeal, cancel, and adjourn the instrument titled Deed of Trust."

53.     The Affidavit is an improper recording by Borrower regarding the Subject Property.

54.     On or about August 21, 2013, Borrower recorded a document in the records for the Subject Property maintained by the Moniteau County, Missouri Recorder of Deeds entitled "Revocation of Election Affidavit."  It is attached hereto as Ex. S.  The Revocation of Election Affidavit referred to the Internal Revenue Service and was an improper recording by Borrower regarding the Subject Property.

55.     Borrower's Note provided that Chase would be entitled to "be paid back by [Borrower] for all of its costs and expenses in enforcing this Note … includ[ing], for example, reasonable attorneys' fees."

56.     Section 22 of Borrower's Deed of Trust also provided for Chase to be compensated by Borrower for Chase's attorneys' fees in enforcing the Note and Deed of Trust.

## COUNT I:     JUDICIAL FORECLOSURE

57.     Chase herein incorporates its above allegations.

58.     Chase is the holder of Borrower's Note and is the beneficiary/grantee under the Deed of Trust securing repayment of the Note.

15

59.     To date, and in breach of his obligations under the Note and Deed of Trust, Borrower has not paid the principal (or any interest) under the Loan Documents or any resulting charges in accordance with the terms and conditions of the Loan Documents, and Borrower's entire debt under the Note and Deed of Trust has been accelerated and is fully due and payable.

60.     Chase is entitled to an order of foreclosure under Borrower's Deed of Trust, with the attendant writ of execution authorizing the sale of the Subject Property at a foreclosure sale where clear title to the Subject Property passes to the foreclosure sale buyer to the exclusion of any interests claimed by Midwest Land Management, David Robey, Joseph Robey, Borrower, or any other unknown entity or person who claims an interest of record in the Subject Property.

61.     Borrower's Deed of Trust constitutes a valid, first, and prior lien on the Subject Property superior to any lien interest claimed by any other person or entity named herein.

62.     Borrower is not now and has not been within any of the limitations of time specified herein, a member of any branch of the service of the United States or its allies within the meaning of the Soldiers' and Sailors' Civil Relief Act of 1940 as amended.

WHEREFORE, Plaintiff requests an order of the Court rendering judgment for the debt due Plaintiff concerning the Subject Loan, and that the judgment (as against all Defendants) provide that the equity of redemption (if any) be foreclosed and authorize by writ of execution (special fieri facias) that the Subject Property (21355 Highway 179, Jamestown, Moniteau County, Missouri 65046) be sold to satisfy the amount of the judgment due Plaintiff, and for such further and other relief as the Court deems just and appropriate.

## COUNT II:   BREACH OF NOTE/ACTION ON INSTRUMENT FOR THE PAYMENT OF MONEY

63.     Chase herein incorporates its above allegations.

64.     The Note (Ex. J) required Borrower to pay interest and repay principal on the Subject Loan in monthly installments.  Any payment not made within 15 calendar days of the due date in a given month was subject to a late fee.

65.     Borrower agreed to pay reasonable costs incurred by Chase to enforce its rights under the Note, including reasonable attorneys' fees and other collection costs.

66.     The Note provided that Chase could require payment of the outstanding balance of the Subject Loan in full, and in a single payment, if Borrower failed to meet the repayment terms of the Note.

67.     To date, and in breach of his obligations under the Note and other Loan Documents, Borrower has failed to repay the principal due or any interest due under the Note (or any resulting charges under the Note) in accordance with the terms and conditions of the Note and Deed of Trust, and Borrower's entire debt under the Note has been accelerated and is fully due and payable.

68.     Borrower defaulted and failed to meet and satisfy his obligations under the Note, and Borrower has dishonored the Note.

69.     Chase has presented the default to Borrower for resolution and Chase has made written demand on Borrower for immediate payment of all outstanding debt due under the Note.  Borrower has failed to respond to Chase's demands, has dishonored his obligations under the Note, and Borrower has failed to satisfy the accelerated amount due under the Note.

70.     As a direct and proximate result of Borrower's breach of his obligations and duties under the Note, Chase has been damaged in an amount of $395,066.63 as of October

24, 2017 plus accruing interest.  This amount includes the unpaid principal balance of $318,403.52.  Per diem interest on the Subject Loan accrues at the rate of $37.08, and Chase seeks to recover additional interest on the Subject Loan at the per diem rate through the date of Judgment.  Chase also seeks to recover any prejudgment interest as allowed by law and its legal fees and costs as allowed by the Note and Deed of Trust.

71.     Pursuant to the Note, Chase is entitled to recover all reasonable costs incurred in connection with the enforcement of the Note, including the legal fees and expenses Chase has incurred and will incur in connection with this litigation.

WHEREFORE, Plaintiff seeks entry of a judgment against Defendant Bryon Nevius for the amount of $395,066.63 as of October 24, 2017 plus accruing interest at the per diem rate of $37.08, plus pre-and post-judgment interest, costs, Chase's attorneys' fees and expenses, and such other and further relief as the Court deems just and appropriate.

## COUNT III:  RESTITUTION/UNJUST ENRICHMENT

72.     Chase herein incorporates its above allegations.

73.     Beginning on or about August 3, 2007 with a draw in the amount of $32,754.40, Chase made disbursements to Borrower on the Subject Loan in recognition of the $331,900.00 Note.  These disbursements were from Chase's own funds and for Borrower's benefit to pay for the construction of the Subject Property.

74.     Chase disbursed these funds because Chase believed it had a valid and enforceable commitment from Borrower to repay the Subject Loan.  However, Borrower refused to convert the loan to a permanent phase by confirming a rate of governing interest.

75.     Borrower received a benefit from Chase's disbursement of funds associated with the Subject Loan.

76.     Despite the benefit given by Chase, Borrower has failed to repay the Subject Loan, including any of the principal or interest in accordance with the terms and conditions of the Note and other Loan Documents.

77.     Borrower has recognized his receipt of this benefit.  Borrower has resided in the Subject Property despite receiving numerous default and collection correspondence from Chase, directly or through its legal counsel, regarding the situation.

78.     It is equitable for Borrower to return the benefit to Chase.  Borrower should not be permitted to retain and enjoy this benefit without paying Chase the benefit's reasonable value.

WHEREFORE, Plaintiff JPMorgan Chase Bank, N.A. seeks entry of a judgment against Defendant Bryon Nevius for the amount of $395,066.63 as of October 24, 2017 plus accruing interest at the per diem rate of $37.08, plus pre-and post-judgment interest, costs, Chase's attorneys' fees and expenses, and such other and further relief as the Court deems just and appropriate.

## COUNT IV:  DECLARATORY RELIEF

79.     Chase herein incorporates its above allegations.

80.     Pursuant to RSMo. § 527.150, Chase seeks relief in the form of a court decree or declaration regarding several aspects of the Subject Property and the Subject Loan. This is an appropriate subject for declaratory relief under RSMo. §§ 527.010 *et seq.*

81.     Regarding the Roadway Easement (Ex. E), it was by inadvertence that the Deed of Trust did not describe the encumbered Subject Property as including the Roadway Easement which is, upon information and belief, the exclusive means of ingress/egress to the

Subject Property.  Chase would not have extended the Subject Loan had Chase not believed the Subject Property was accessible.

82.     The Roadway Easement was granted to Borrower at the same time and in conjunction with the same transaction as he came to have a fee simple ownership interest in the Subject Property.  Via the Deed of Trust, Borrower then granted Chase a lien and security interest in the Subject Property.  The Loan Documents evidence that a residence would be constructed on the Subject Property, and the parties intended that the Roadway Easement would benefit and run with the Subject Property for the use and benefit of the current owner of the Subject Property and all subsequent owners of the Subject Property.

83.     Based on the recorded instruments described above and in light of all the circumstances, equities considered, Chase should have a legally-protectable interest in the Roadway Easement that is subject to the foreclosure decree requested above.  Chase seeks to ensure that the Roadway Easement is declared valid and to be of benefit to the interests of Borrower as current owner of the Subject Property and any subsequent owners of the Subject Property.  Chase requests a decree of the Court including the Roadway Easement in the legal description of the mortgaged property contained in the Deed of Trust, such that the Deed of Trust is thereby reformed.

84.     The issue (and all others described in this Count) is appropriate and ripe for judicial determination.  A justiciable controversy exists regarding these issues.

85.     Regarding the Robey Assignment (Ex. B), Chase seeks a judicial declaration that the debt associated with the Robey Deed of Trust was satisfied and paid off, such that the Robey Deed of Trust is extinguished, declared null and void, or otherwise declared to not encumber the Subject Property.  Further, the Construction Loan Agreement and other Loan

Documents signed by Borrower contained a covenant that no encumbrances would compete with or be declared superior to the lien of the Deed of Trust.

86.     Regarding the Warranty Deed from Borrower to Midwest Land (Ex. A), Chase seeks a judicial declaration that the Warranty Deed is extinguished, declared null and void, or otherwise declared to not encumber the Subject Property.  Pursuant to the Deed of Trust, Borrower was prohibited from transferring any interest in the Subject Property.  Borrower executed the Warranty Deed in violation of the Deed of Trust.

87.     Regarding the Affidavit (Ex. R), Affidavit of Adverse Possession (Ex. Q), and Revocation of Election Affidavit (Ex. S), these recordings in the land records for the Subject Property are improper and were filed improperly by Borrower.  They violate his covenant to ensure the effectiveness of the lien of the Deed of Trust in Chase's favor.

88.     Chase seeks a court decree or declaration that the Affidavit (Ex. R), Affidavit of Adverse Possession (Ex. Q), and Revocation of Election Affidavit (Ex. S) are null, void, and represent no lien or other valid interest in the Subject Property and do not encumber the Subject Property.  Chase seeks a court order having the effect of striking the Affidavit, Affidavit of Adverse Possession, and Revocation of Election Affidavit from the records of the Moniteau County, Missouri Recorder of Deeds for the Subject Property.

WHEREFORE, in addition to such other and further relief as the Court deems appropriate, Plaintiff prays for entry of an order and judgment setting forth the decrees identified in the immediately above Count and for such further and other relief as the Court deems just and appropriate.

Respectfully submitted,

**BRYAN CAVE LLP**

By:  /s/ Jennifer A. Donnelli
    Jennifer A. Donnelli    MO #47755
    1200 Main Street, Suite 3800
    Kansas City, MO 64105
    (816) 374-3200 (telephone)
    (816) 374-3300 (facsimile)
    jadonnelli@bryancave.com

ATTORNEYS FOR PLAINTIFF
JPMORGAN CHASE BANK, N.A.

NOTICE TO BORROWER: If you wish to dispute the validity of all or any portion of this debt, or would like the name and address of the original creditor, you must advise us in writing within thirty (30) days of the first notice you receive from us.  Otherwise, we will assume the entire debt to be valid. This is an attempt to collect a debt, and any information obtained will be used for that purpose.

The commencement of the foreclosure action does not affect the rights as set forth in the initial demand letter.